JAMES H. MAGRUDER *v.* CUMBERLAND TELEPHONE AND TELE-
GRAPH COMPANY.

[46 South., 404.]

PAYMENT. *Place of. Duty of debtor to seek creditor. Telephone com-
pany. Custom.*

    A telephone company, giving timely notice, may abandon a custom
    of presenting bills by a collector and require subscribers to pay
    their dues at the company's office.

FROM the circuit court of, first district, Hinds county.
HON. DAVID M. MILLER, Judge.

Magruder, appellant, was plaintiff in the court below; the
telephone company, appellee, was defendant there. From a
judgment in defendant's favor the plaintiff appealed to the su-
preme court. The facts are stated in the opinion of the court.

*Lowry & Lowry,* for appellant.

There is no reason why the law as to rent and tolls of the
Cumberland Company should be different from the law pertain-
ing to land or house rentals, or any other character of rentals.
It takes two persons to make a contract and in the ordinary
transactions of life, unless there is a contract to the contrary,
rents are paid and are payable where the debtor resides.

Where land is rented for a money rent, the landlord presents
his bill to the tenant unless there be a contract to the contrary.
If the rent is to be paid in the product of the land, the products
are delivered where made in the absence of a contract to the con-
trary.

The Cumberland Telephone Company assumed to make
contracts with its patrons by publishing a little notice and en-
forcing it with such of the patrons as it deemed proper.

The inconvenience and financial loss sustained by the cutting
out of a telephone seem a matter of indifference to appellee. It

is within the knowledge of every man, whatever his vocation may be, that a telephone has become a necessity in the home, the counting room, the office of the lawyer or doctor, indeed in every character of business, and when one is deprived of its service, it entails inconvenience, hardships, and pecuniary loss.

*Harris & Powell,* for appellee.

The case in a nut-shell is simply this:—The company concluded to dispense with collectors, and, two weeks before the rule was to go into operation, sent notices to its customers, among whom was Magruder. The appellant took it into his head that the company had no right to do this, and that the creditor must come to him, and that it was not his duty to go to his creditor to settle his bills. After he was in default for ten days he was notified that if his bill was not paid within three days the company would conclude that he wished to discontinue the service, and would plug him out. He still refused to pay, and he was plugged out. The testimony shows that his telephone was never taken out of his house, but his service was discontinued, and it does seem also that afterwards the bills were sent to his office and that he did pay them, but this was a matter that the company was not compelled to do, we insist, and the fact that it was done in his instance does not affect the question as to the legal right of the company to discontinue the service if he did not pay after he had been amply notified what the consequences would be.

In the first place the telephone company was not under legal obligation at any time to send out collectors to collect bills. Of course it could be said that the party who had relied upon this custom would be entitled to notice of its discontinuance, but in this case Magruder was amply and fully notified that the custom would be discontinued, and after the custom had been discontinued he was courteously notified that his bill was overdue and that if he did not pay it the company would plug him out. There is certainly no unreasonableness in this regulation, and

if the regulation was a reasonable one, the company had a right to make it, and certainly a right to enforce it. Magruder was simply mistaken as to what he supposed to be his legal rights. The fact that the company had for a number of years put itself to the expense and trouble of sending out collectors, did not impose upon it any legal obligation to continue to do so. "A favor extended does not ripen into a right." *Dixon* v. *Railroad Co.*, 61 Miss., 119.

The general rule is well settled that a debtor must search out his creditor to pay. It is hardly necessary, we take it, to cite authorities on this point. 18 Am. & Eng. Ency. of Law (1st ed.), 198; 2 Parsons on Contracts, 636; 39 Am. Dig., 19.

That a telephone company has a right to plug out the telephone of a delinquent subscriber, is established by an overwhelming line of authorities. 29 Am. & Eng. Ency. of Law (1st ed.), 18; *Shiras* v. *Erbing*, 48 Kan., 107; *Sherod* v. *Water Co.*, 9 Cal., 635; *Thompson* v. *Patterson*, 24 S. W., 1125; *Brum's Appeal*, 12 Atl. Rep., 855; *McDaniels* v. *Water Co.*, 48 Mo. App., 273; *Tacoma Hotel Co.* v. *Tacoma Light Co.*, 3 Wash., 316; *Rockland Water Co.* v. *Adams*, 84 Me., 472; *Sheppard* v. *Milwaukee Gas Co.*, 6 Wis., 536; *Williams* v. *Gas Co.*, 52 Mich., 449; *People* v. *Manhattan Gas. Co.*, 45 Barb. (N. Y.), 136; *Baker* v. *Telephone Co.*, 85 Miss., 486, 489, 37 South., 1012; *Burke* v. *Water Valley*, 87 Miss., 737, 40 South., 820.

Argued orally by *Robert Lowry*, for appellant and by *J. B. Harris*, for appellee.

CALHOON, J., delivered the opinion of the court.

This is an action for damages by appellant against appellee because he was cut off from telephone connection in the month of May, and again in the month of August. The averment is that appellant had paid every bill presented to him punctually and promptly for some years. He had paid, though, on presentment to him at his office. It appears, however, that in the

instances where the telephone service was cut off, the appellant, in common with all subscribers to that service in the city of Jackson, had received previously a notice that the company would, from and after a certain date, cease to present telephone bills through a collector, but require them to be paid at its office. The appellant received the notice, but had the idea that, as a matter of right, they should be presented for payment at his office, and this litigation is in the utmost good faith to obtain a solution of that question.

We think it thoroughly well settled for centuries that he who owes must find the creditor and pay him. Certainly this is true, if the creditor is in the same state. He must do this in person, or by agent, or by check at the risk of the debtor. 22 Am. & Eng. Ency. of Law (2d ed.), 533, and authorities cited to note 5 from England and America, covering eleven states of the American Union. This rule is without dissent anywhere, and includes merchants, lawyers, doctors, landlords, express companies, railroad companies, telephone and telegraph companies, and all the trades. It applies to all commercial paper not payable on demand or for protest to bind parties secondarily liable. The reverse would cripple commerce. If there had been a habit of presenting bills through a collector, such a habit is *ex gratia,* and may be abandoned at will on proper notice. In the case before us notice was given, the custom of presentation by collectors was abandoned, and the company had the right, subsequently, to payment at its own office. This being our view of the law, it is wholly unnecessary to go into the question of the rulings on admissibility of testimony, because, if this view be right, it is immaterial as to what was the damage suffered, being not recoverable, and in the matter of discrimination it is sufficient to say that that is not within the scope of this particular proceeding, and, besides, there is no sufficient evidence of discrimination to be found in this record.

*Affirmed.*